IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TORY WILLIAMS,** *Parent and Natural Guardian of K.W.B., a Minor*, | CIVIL ACTION |
| Plaintiff, | NO. 20-408-KSM |
| *v.* | |
| **AMAZON, INC.**, **et al.**, | |
| Defendants. | |

## MEMORANDUM

**MARSTON, J.**                                                                                   November 30, 2021

      Plaintiff Tory Williams, parent and natural guardian of K.W.B., a minor, sued Amazon.com, Inc. ("Amazon") and Fab Cart Available Actions d/b/a Fab Cart ("Fab Cart") after purchasing a henna tattoo kit from Fab Cart on Amazon's website that ultimately scarred and disfigured K.W.B.'s face.  (Doc. No. 20.)  Williams asserts five causes of action against Defendants:  negligence (Count I), strict product liability (Count II), breach of the implied warranty of merchantability (Count III), misrepresentation (Count IV), and breach of the implied warranty of fitness for a particular purpose (Count V).  (*Id.*)

      Presently before the Court is Amazon's Partial Motion to Dismiss Counts IV and V. (Doc. No. 38.)  For the reasons discussed below, Amazon's motion is denied in part and granted in part.

**I.      Factual Background and Procedural History**

      Accepting all allegations in the amended complaint as true, the relevant facts are as follows.

      On December 15, 2017, Williams purchased a GSN Temporary Tattoo India Henna

Tattoo Paste Black Tatouage Temporary Paste Cone Body Art Painting with Henna Stencil set through the Fab Cart marketplace on Amazon. (Doc. No. 20 at ¶ 7.) About a month later, on January 14, 2018, K.W.B. applied the henna tattoo product to her left arm and fell asleep with her face on her left hand. (*Id.* at ¶ 10.) The next day, January 15, K.W.B. woke up with permanent and disfiguring burns on her face and left arm. (*Id.* at ¶ 11.)

On January 24, 2020, Williams filed this suit against Amazon (Doc. No. 1),[1] and she amended her complaint on March 24 and 26, 2020 (Doc. Nos. 4, 6). This Court stayed the case, pending the Third Circuit's *en banc* ruling, and then the Pennsylvania Supreme Court's ruling, in *Oberdorf v. Amazon.com*, No. 18-1041. (Doc. Nos. 15, 18.) While the stay was pending, on August 6, 2020, Williams filed an amended complaint, adding Fab Cart as a defendant. (Doc. No. 20.) In the amended complaint, Williams alleges that Defendants misrepresented the product's "character, quality and fitness" by making "statements that the product was safe, safe for its intended use, and was free from defects," and that Defendants breached the implied warranty of fitness for a particular purpose, i.e., to create a temporary henna tattoo. (Doc. No. 20 at ¶¶ 61, 73, 75.)

Williams then attempted, unsuccessfully, to serve Fab Cart in India pursuant to the Hague Convention. At the request of the parties, even after the *Oberdorf* matter was resolved, this Court continued the stay, pending service on Fab Cart. (Doc. Nos. 23–24.) On September 29, 2021, after the parties informed the Court that Williams's process server's attempts to effectuate service on Fab Cart in India proved unfruitful, the Court lifted the stay. (Doc. Nos. 35–36.) Shortly thereafter, on October 11, 2021, Amazon filed a partial motion to dismiss Counts IV and V (Doc. No. 38), and Williams opposed the motion (Doc. No. 42).

---

[1] The matter was reassigned from the Honorable Juan R. Sanchez to the Honorable Karen Spencer Marston on February 24, 2020. (Doc. No. 2.)

## II.     Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although we must accept as true the allegations in the amended complaint, we are not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).

## III.    Discussion

### A.     *Misrepresentation*

In Count IV, Williams asserts a claim against Defendants for misrepresentation, alleging that Defendants misrepresented the tattoo kit's "character, quality and fitness" through statements "that the product was safe, safe for its intended use, and was free from defects." (Doc. No. 20 at ¶ 61.)  Williams brings the misrepresentation claim pursuant to § 402B of the Restatement (Second) of Torts, which states:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
>
> (a)     it is not made fraudulently or negligently, and
>
> (b)     the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402B.  Pennsylvania has adopted this section of the

Restatement.  *See Klages v. Gen. Ordnance Equip. Corp.*, 367 A.2d 304, 310 (Pa. Super. Ct. 1976).

Amazon moves to dismiss the misrepresentation claim, arguing that any alleged statements about the product's safety constitute "mere puffery" and therefore are not actionable. (*See* Doc. No. 38 at pp. 7–9.)  In so arguing, Amazon relies on the Pennsylvania Supreme Court's decision *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893 (Pa. 1975), *abrogated on other grounds*, *Reott v. Asia Trend, Inc.*, 55 A.3d 1088 (Pa. 2012).  In *Berkebile*, the defendant advertised a two-person helicopter as "safe," "dependable," "not tricky to operate," and "easy to fly." *Id.* at 897.  The plaintiff's estate sued the defendant after he died from a crash that occurred while he was piloting a helicopter manufactured by the defendant, contending that the defendant had misrepresented the safety of the helicopter in its advertisements. *Id.*  The Pennsylvania Supreme Court disagreed and held that the statements did not constitute misrepresentations of material fact; rather, they were mere puffery, which is distinguishable. *Id.* at 103–04 ("Misrepresentation must be distinguished from mere 'puffing.'").

Contrary to Williams's suggestion otherwise (Doc. No. 42-2 at p. 10), many courts have continued to follow *Berkebile*'s guidance that misrepresentation and puffery are distinguishable, and that describing a product as "safe" may fall in the latter category.  *See, e.g.*, *Hittle v. Scripto-Tokai Corp.*, 166 F. Supp. 2d 142, 158–59 (M.D. Pa. 2001) (rejecting the plaintiff's contention that the defendant misrepresented that the lighter was safe for household use by depicting birthday candles, a fireplace log, and charcoal on its packaging, granting summary judgment on the § 402B misrepresentation claim, and reasoning that "[i]f the defendant in *Berkebile* engaged in puffing, then certainly [the defendant in this case] . . . should not be held liable"); *cf. Fusco v. Uber Techs., Inc.*, Civil Action No. 17-00036, 2018 WL 3618232, at *6–8 (E.D. Pa. July 27,

4

2018) (granting defendant's motion to dismiss the plaintiff's fraud, negligent misrepresentation, and statutory consumer fraud claims because the defendant's statements that its services were "safe" was puffery and not actionable, and noting that "there is no way to prove that a product is not 'good,' 'dependable,' or, in the abstract, 'safe'"); *Sabol v. Ford Motor Co.*, Civil Action No. 14-6654, 2015 WL 4378504, at *4 (E.D. Pa. July 16, 2015) (granting summary judgment to the defendant on the plaintiff's express warranty claim because "[t]he advertising statements identified by [the plaintiff]—that the vehicle she ultimately purchased was 'safe' and 'reliable'— are not measurable and amount to puffery.").

Nonetheless, all but one[2] of the cases cited predated the Pennsylvania Supreme Court's decision, *Commonwealth ex rel. Shapiro v. Golden Gate National Senior Care LLC*, 194 A.3d 1010 (Pa. 2018), which stated that "[s]tate and federal courts are united in the principle that the determination as to whether a statement is deemed puffery is a question of fact to be resolved by the finder of fact except in the unusual case where the answer is so clear that it may be decided as a matter of law." *Id.* at 626–27 (collecting cases).[3] Therefore, the Court declines at this time to rule as a matter of law that the description of the product as safe is mere puffery.

The Court is also not persuaded by Amazon's argument, raised for the first time in its reply brief, that the heightened pleading standard in Federal Rule of Civil Procedure 9(b) applies to Williams's misrepresentation claim. (*See* Doc. No. 43 at p. 6.) First, Amazon waived the

---

[2] There is one exception, a Middle District of Florida case applying Pennsylvania law at the motion to dismiss stage, *Yachera v. Westminster Pharmaceuticals*, which was decided in 2020; however, the court in *Yachera* did not address or cite to *Golden Gate*.

[3] Although *Commonwealth ex rel. Shapiro* involved a claim brought under the Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), whereas Williams's claim arises under § 402B of the Restatement, we believe that the Pennsylvania Supreme Court would apply the same analysis in this context as well—i.e., holding that whether a statement is puffery is a question of fact for the jury to decide.

argument by waiting to raise it until its reply brief.  *See Hayes v. Silvers, Langsam & Weitzman, P.C.*, 441 F. Supp. 3d 62, 66 n.4 (E.D. Pa. 2020) ("[T]he Court declines to consider arguments raised for the first time in a Reply brief and therefore deems Defendant's argument as to whether Korenberg's comment was 'because of sex' waived."); *Rogers v. Smith Volkswagen, LTD*, Civil Action No. 19-2567, 2020 WL 1676400, at *8 n.6 (E.D. Pa. Apr. 6, 2020) ("Because Smith waited to raise this argument until its reply brief, Smith has waived this argument and it will not be addressed."); *Doherty v. Allstate Indem. Co.*, Civ. A. No. 15-05165, 2017 WL 1283942, at *23 (E.D. Pa. Apr. 6, 2017) ("[B]ecause this argument was asserted for the first time in Doherty's reply and at oral argument, it is waived.").  Second, Amazon has not cited—and we have not identified—a single case applying the heightened Rule 9(b) standard to a misrepresentation claim brought under § 402B of the Restatement.  And Amazon's citations to cases applying Rule 9(b) to *fraud* and *negligent* misrepresentation claims are inapposite because a plaintiff can bring a misrepresentation claim under §402B of the Restatement *even if the statement was not made fraudulently or negligently*.  Furthermore, at least one other court in this Circuit has held that the Rule 9(b) heightened pleading standard does not apply to misrepresentation claims brought under § 402B of the Restatement.  *See Laskowski v. Brown Shoe Co., Inc.*, Civil Action No. 3:14-CV-01812, 2015 WL 1286164, at *5 (M.D. Pa. Mar. 20, 2015).

Finally, the Court turns to Amazon's argument that Williams's misrepresentation claim must be dismissed because she does not sufficiently plead justifiable reliance and makes only conclusory allegations.  (Doc. No. 38-2 at p. 9.)  In her amended complaint, Williams alleges that Defendants misrepresented that the product was safe and free from defects, that "Plaintiff justifiably and reasonably relied on these misrepresentations when using the products," and that,

as a result, K.W.B. was burned and scarred.  (*See* Doc. No. 20 at ¶¶ 61, 65, 67.)  Although a close call, the Court finds that Williams's allegations as to justifiable reliance pass muster and survive the motion to dismiss.  *See Laskowski*, 2015 WL 1286164, at *5 ("Here, the complaint alleges that 'Defendants made representations to consumers regarding the character or quality of Avia toning shoes, including but not limited to statements that the Avia toning shoes had health benefits' and that Plaintiff 'justifiably relied upon Defendants' representation regarding the Avia toning shoes. . . . [T]his Court finds that Plaintiffs have sufficiently alleged a misrepresentation claim under Restatement (Second) of Torts § 402B.").

Therefore, the Court denies Amazon's motion to dismiss as to Williams's misrepresentation claim.

   B. *Implied Warranty of Fitness for a Particular Purpose*

In Count V, Williams asserts a claim against Defendants for breach of implied warranty of fitness for a particular purpose.  (Doc. No. 20 at pp. 12–14.)

An implied warranty of fitness for a particular purpose arises "when the seller at the time of contracting has reason to know (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods."  13 Pa. Cons. Stat. Ann. § 2315; *see also Gall ex rel. Gall v. Allegheny County Health Dep't*, 555 A.2d 786, 790 (Pa. 1989).  It is well-settled that a product's "particular purpose" is distinct from its "ordinary purpose"—a critical distinction here.  *See, e.g.*, *Gall*, 555 A.2d at 790; *Visual Commc'ns, Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 611 F. Supp. 2d 465, 471 (E.D. Pa. 2009) (explaining the specific meaning of the term "particular purpose" and how that distinguishes the warranty of implied fitness from the implied warranty of merchantability); *Morello v. Kenco Toyota Lift*, 142 F. Supp. 3d 378, 389 (E.D. Pa. 2015) (same).  Namely, under

Pennsylvania law,

> [a] "particular purpose" differs from the "ordinary purpose" for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

*Gall*, 555 A.2d at 790 (citation omitted). In other words, a product's ordinary purpose relates to the implied warranty of merchantability of a product, whereas an implied warranty for fitness for a *particular* purpose necessarily involves something beyond a product's *ordinary* purpose.

Amazon argues that Williams's claim that Amazon breached its implied warranty of fitness for a particular purpose, Count V, must be dismissed because Williams conflates "ordinary purpose" with "particular purpose." (Doc. No. 38-2 at pp. 9–11.) We agree. Williams conflates the product's ordinary purpose and its particular purpose. As to the breach of the implied warranty of fitness for a particular purpose claim, Williams alleges that Defendants "warrant[ed] that the product was safe and fit for *a particular purpose, i.e. a temporary henna tattoo*." (Doc. No. 20 at ¶ 73 (emphasis added).) But being a temporary henna tattoo is the *ordinary* purpose of a temporary henna tattoo kit. *See James v. United States*, Civil Action No. 19-04627, 2020 WL 1624883, at *4 (E.D. Pa. Apr. 2, 2020) (granting motion to dismiss implied warranty of fitness for a particular purpose claim because the plaintiff "fail[ed] to allege that the hospital intended to use the Symbia Evo machine for a 'particular purpose' other than its ordinary purpose of performing imaging studies on patients"); *Frey v. Grumbine's RV*, Civil 1:10-CV-1457, 2010 WL 4718750, at *7 (M.D. Pa. Nov. 15, 2010) (granting motion to dismiss implied warranty of fitness for a particular purpose claim where the plaintiff "allege[d] that her 'purpose in buying the motor home was for recreational purposes, and to begin traveling and camping'" because "traveling, camping and recreation are the general purposes of a motor home,

not particular purposes"); *see also Visual Commc'ns, Inc.*, 611 F. Supp. 2d at 471 (granting summary judgment where the plaintiff alleged that the copiers' malfunctioning breached the implied warranty of fitness for a particular purpose and noting that the plaintiff's statement that "obviously copiers are used for copying" "fails to account for the different between 'ordinary purpose' and 'particular purposes' under the UCC [Uniform Commercial Code]."); *Morello*, 142 F. Supp. 3d at 389–90 (granting summary judgment on implied warranty of fitness for a particular purpose claim because "[a] safe, defect-free forklift goes to its 'ordinary purpose' not its 'particular purpose'"). Indeed, Williams's own pleading makes that clear. (*Compare* Doc. No. 20 at ¶ 73, *with id.* at ¶ 51 (alleging in Count III, the implied warranty of merchantability claim, that Defendants "warrant[ed] that the product was safe, fit for its *ordinary and general purpose, i.e., a temporary henna tattoo*." (emphasis added)).)

Accordingly, the Court grants Amazon's motion to dismiss as to the implied warranty of fitness for a particular purpose claim, with prejudice.[4]

## IV. Conclusion

For the foregoing reasons, the Court denies Amazon's motion to dismiss as to the misrepresentation claim (Count IV) and grants Amazon's motion to dismiss with respect to the implied warranty of fitness for a particular purpose claim (Count V).

An appropriate Order follows.

---

[4] Upon reviewing the amended complaint, the Court concludes that amendment would be futile. *See Frey*, 2010 WL 4718750, at *7 ("Although the court may grant leave to amend a complaint that is merely deficient, [the plaintiff's] complaint is completely devoid of factual allegations suggesting that she purchased the motor home for a particular purpose at all, let alone one that was known to [the defendant] at the time of the purchase. As such, the court concludes that leave to amend would be futile[.]").