IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TORY WILLIAMS, parent and natural guardian of K.W.B., a minor,**<br>    Plaintiffs,<br><br>       *v.*<br><br>**AMAZON.COM, INC., et al.**,<br><br>    Defendants. | **CIVIL ACTION**<br><br>**NO. 20-408-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                                                          **January 24, 2023**

      Tory Williams,[1] parent and natural guardian of K.W.B., a minor, has sued Amazon.com, Inc.,[2] for negligence, strict product liability, and breach of the implied warranty of merchantability, and misrepresentation after purchasing a henna tattoo kit on Amazon's website that ultimately scarred and disfigured K.W.B.'s face.[3]  (Doc. No. 20.)  Before the Court is Plaintiffs' Petition for Approval of Compromise of Minor's Action (Doc. No. 63) and supplemental brief (Doc. No. 65).  The Court held a hearing on January 24, 2023.  For the reasons below, the Court will grant the Petition.

*I.     Background*

      On December 15, 2017, Plaintiff purchased a henna tattoo kit on Amazon's website.

---

[1] Tory Williams is now Tory Thomas.  (*See* Doc. No. 63 at 1 ("Plaintiff, Tory Williams (now Tory Thomas), parent and natural guardian of K.W.B., a minor, . . . hereby files the instant Petition . . ."); Doc. No. 65 at 1.)

[2] Williams also sued Fab Cart Available Actions d/b/a Fab Cart, located in India, but was unable to effectuate service under the Hague Convention.  (*See* Doc. Nos. 20, 35, 44 at 2.)

[3] Williams also originally brought an implied warranty of fitness for a particular purpose claim, but the Court granted Amazon's motion to dismiss as to that claim.  (*See* Doc. No. 44.)

(Doc. No. 20 at ¶ 7.) On January 14, 2018, K.W.B. applied the product to her left hand and then fell asleep on her left hand. (*Id.* at ¶ 9; Doc. No. 63-1 at 9.) On January 15, K.W.B. woke up with permanent and disfiguring injuries and burns on her face and left hand. (Doc. No. 20 at ¶ 10; *see also* Doc. No. 63-1 at 9 (stating that when K.W.B. awoke, "she had blisters, swelling, and pain involving her left cheek and left hand"); *id.* at 10 (opining that K.W.B. "has sustained permeant scars of her left cheek and left hand" which represent "a permanent cosmetic deformity").) That morning, K.W.B. was evaluated at Taylor Hospital's Emergency Room and treated with Prednisone, Benadryl, and topical antibiotics. (Doc. No. 63-1 at 9.) She was referred to Chester Crozier Medical Center Burn Wound Care for follow-up care, which included topical antibiotics, Santyl, and subsequent scar care. (*Id.*)

As far as her open wounds were concerned, K.W.B. felt that she had healed by April 2018. (*Id.*) However, she has residual scarring involving her left hand and left cheek and has discoloration and intermittent pain of the left cheek. (*Id.*; *see also id.* at 10 ("Physical confirms the presence of an area of obvious hyperpigmentation and scarring involving the left cheek. The scarred area measures approximately 8 cm x 7.5 cm."); *id.* (opining that even with therapies, "there would be residual scarring and a permanent cosmetic deformity").)

On January 24, 2020, Plaintiff initiated this suit against Amazon.[4] (Doc. No. 1.) On September 13, 2022, the parties participated in a settlement conference with Magistrate Judge David R. Strawbridge. (Doc. No. 63 at ¶ 8.) The parties reached a settlement, pursuant to which Amazon agreed to pay a lump sum[5] to be held in trust for K.W.B. (*Id.* at ¶ 8; *see also* Doc. No.

---

[4] The Court has diversity jurisdiction over this suit.

[5] The Court will not disclose the exact terms of the settlement here, as the Petition and its supporting documents were filed under seal and there is a confidentiality clause in the settlement agreement itself.

63-1 at 2 ¶).)

Although there are no outstanding medical bills, there is a medical lien, which will be paid out of the settlement proceeds. (Doc. No. 63 at ¶¶ 12, 16; *see also* Doc. No. 63-1 at 7 (Oct. 24, 2022 Ltr. from Pa. Dep't of Human Services to Plaintiff's Counsel) (stating that the Department of Human Services ("DHS") agreed to reduce the claim by approximately $600).)

Plaintiff's counsel also seeks reimbursement of the costs advanced in connection with this litigation. (Doc. No. 63 at ¶ 15; *see also* Doc. No. 65.) These include the court filing fee, international service costs, costs for obtaining medical records, deposition and court reporting costs, and expert expenses. (Doc. No. 63-2 at 19.)

Plaintiff's counsel was retained upon a contingency fee agreement for his representation of K.W.B. (*Id.* at 16 ("I hereby constitute and appoint Gerald B. Baldino, Jr., Esquire and his law firm, Sacchetta & Baldino, to prosecute a claim for personal injuries . . . related to a product defect. The claim is Tory Williams, Parent and Natural Guardian of [K.W.B.], a minor, and the cause of action arose on or about January 16, 2018.").) Williams and Plaintiff's counsel agreed counsel was entitled to recover 33 1/3% of the gross settlement amount in the event that the matter settled *before* filing a lawsuit; the percentage was increased to 40% in the event settlement occurred *after* initiation of a lawsuit. (Doc. No. 63-2 at 16 ("In the event of a recovery of any sum of money by way of settlement before initiation of a lawsuit, my said

---

At this point, the Court finds that it is appropriate to maintain the confidentiality of the settlement agreement. Disclosure of the terms of the settlement could "work a clearly defined and serious injury" as to Defendants, including by hampering their ability to litigate and/or negotiate the resolution of future actions. *Genentech, Inc. v. Amgen, Inc.*, No. 17-cv-1407, 2020 WL 9432700, at *6 (D. Del. Sept. 2, 2020) (granting motion to seal where "[r]evelation of the terms of settlement agreements . . . could place the parties at a demonstrable disadvantage in navigating and negotiating other litigation contests"). However, the Court reserves the authority to unseal the settlement agreement should it become necessary in the future to protect the public's right of access.

attorney, for and in consideration of professional services to be rendered by him and by his firm in the investigation, institution and general conduct of the said case, shall be entitled to received [sic] counsel's fees of thirty three and one third percent (33 1/3 %) of the gross amount recovered, plus reimbursement of costs expended by my said attorney incident to the investigation, institution and prosecution of this case."); *id.* ("In the event that it is necessary to file a lawsuit . . . , my attorney shall be entitled to receive counsel fees of forty percent (40%), plus expenses as stated above, including trial costs.").)  Although Plaintiff's counsel settled the action *after* initiation of a lawsuit, he has agreed to lower his fee from 40% to 33 1/3%.  (Doc. No. 63 at ¶ 14; *see also* Doc. No. 65.)

The proposed net amount K.W.B. will receive, after subtracting attorneys' fees, costs, and expenses from her award, as well as the medical lien, is slightly greater than half of the lump sum award.  (*See generally id.*)

## II.     Discussion

### A.     The Minor Settlement

"No claim of a minor . . . in which a minor . . . has an interest shall be compromised, settled, or dismissed unless approved by the court."  E.D. Pa. Local R. 41.2(a).  In determining whether to approve a settlement made on behalf of a minor, a court must assess "whether the settlement amount is fair and in the best interests of the minor."  *Henderson ex rel. Bethea v. Nationwide Mut. Ins. Co.*, No. 00–1215, 2001 WL 43648, at *3 (E.D. Pa. Jan. 4, 2001).  A court must consider the parties' petition for approval of the settlement, which "should include all relevant facts and the reasons why the minor's guardian believes the settlement is desirable and why it is in the minor's best interest to settle the action."  *Lee v. Victoria's Secret, LLC*, Civil Action No. 10–3662, 2012 WL 628015, at *2 (E.D. Pa. Feb. 27, 2012).  "Relevant facts include 'a description of the minor's physical and/or psychological condition, a statement and/or

4

discussion regarding the minor's current physical and/or mental health needs, evidence of the extent of the minor's condition, and the need for future medical and/or psychological care, as well as future expenses.'" *Id.* (quoting *Johnson v. Clearfield Area Sch. Dist.*, 319 F. Supp. 2d 583, 587 (W.D. Pa. 2004)). "Courts should give 'considerable weight' to the judgment of the parties and counsel, as they are 'typically in the best position to evaluate the settlement.'" *Id.* (quoting *Henderson*, 2001 WL 43648, at *2).

Here, K.W.B. suffered blisters, swelling, and pain involving her left hand and left cheek and had two months of follow-up care for these wounds. (*See* Doc. No. 63-2 at 9.) Although K.W.B.'s open wounds fully recovered by April 2018, K.W.B. suffers from permanent scarring and a permanent cosmetic deformity. (*Id.* at 9–10.) The Court finds that the proposed settlement award is reasonable, as K.W.B. will not require any future medical care for her injuries but will sustain lifelong scarring.[6] K.W.B.'s mother agrees that the proposed settlement is in K.W.B.'s best interest (*see* Doc. No. 63 at ¶ 11), and considering the circumstances of the case, the Court agrees—the proposed settlement amount is fair and in K.W.B.'s best interests.[7] The Court notes that the funds will be placed in K.W.B.'s name in an interest bearing account, which will be FDIC-insured, and the funds will not be removed prior to the minor turning eighteen without the Court's permission.

---

[6] Plaintiff's expert states that Plaintiff may obtain some cosmetic improvement for her scarring through the use of prescription medications and/or the utilization of chemical peels. (*See* Doc. No. 63-1 at 10.) The expert estimates that the lifetime expense for such treatments will likely be only a small fraction of the overall lump settlement sum. *(Id.)*

[7] K.W.B., who is currently seventeen years old, signed a minor consent, which represents that she reviewed the schedule of distribution and consented to the settlement and distribution of the settlement proceeds. This is in accordance with Delaware County Court of Common Pleas's Local Rules of Civil Procedure. *See* Del. Cty. (Pa.) Local R. 2039(a)(4) ("The petition to compromise, settle or discontinue a minor's action shall include . . . [t]he minor's written approval of the proposed settlement and distribution (or discontinuance) in the event the minor has attained the age of sixteen 16.").)

### B.     *Attorneys' Fees*

Likewise, "[n]o distribution of proceeds shall be made out of any fund obtained for a minor . . . as a result of a compromise, settlement, dismissal or judgment unless approved by the court." E.D. Pa. Local R. 41.2(b).  Further, "[n]o counsel fee . . . shall be paid out of any fund obtained for a minor . . . as a result of a compromise, settlement, dismissal or judgment unless approved by the court." E.D. Pa. Local R. 41.2(c).  "There is no question that competent attorneys should be compensated for their services," and attorneys who work on contingency fees run a risk by accepting cases without any guarantee of payment; however, a court has discretion to adjust the amount of counsel fees to be paid out of a settlement fund for a minor, even when a contingency arrangement is in place.  *See Lee*, 2012 WL 628015, at *3; *Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 670 (E.D. Pa. 2000).

In determining the reasonableness of the attorneys' fees, the court must consider the lodestar amount set by the court of common pleas in the county with jurisdiction over the minor. *Nice*, 98 F. Supp. 2d at 670; *see also Lee*, 2012 WL 628015, at *4 ("The first step . . . is to determine 'whether the court of common pleas in the county with jurisdiction over the minor has adopted a presumptive lodestar for fees involving the settlement of a minor's claims.' (citation omitted)).  K.W.B. lives in Delaware County, so the following requirements govern:

> If the proposed distribution includes a claim for counsel fees in excess of twenty-five percent (25%) of the net (after expenses incurred by counsel) settlement, evidence shall be presented as the nature and extent of the services rendered.

Del. Cty. (Pa.) Local R. 2039(b)(1).  Where a presumptive lodestar exists, the court "may adjust that lodestar depending on the effectiveness of the counsel's performance under the circumstances." *Lee*, 2012 WL 628015, at *4.  The Court should consider the following factors in determining whether to adjust the lodestar:

6

>  (1) the amount of work performed;
>
>  (2) the character of the services rendered;
>
>  (3) the difficulty of problems involved;
>
>  (4) the importance of the litigation;
>
>  (5) the degree of responsibility incurred;
>
>  (6) whether the fund involved was "created" by the attorney;
>
>  (7) the professional skill and standing of the attorney in her profession;
>
>  (8) the result the attorney was able to obtain;
>
>  (9) the ability of the client to pay a reasonable fee for the services rendered; and
>
>  (10) "very importantly," the amount of money in question.

*Johnson*, 319 F. Supp. 2d at 590–91 (citing *Nice*, 98 F. Supp. 2d at 671).

  Here, the presumptive lodestar is 25% and Plaintiff's counsel seeks 33 1/3% of the gross settlement amount, so the Court must consider the circumstances of the counsel's performance to determine whether the "nature and extent of the services rendered" justifies the 33 1/3% allocation.

  *Amount of Work Performed and Character of the Services Rendered.*  Plaintiff's counsel began representing Plaintiff in February 2018, has been preparing for and litigating this matter for over four and a half years, and has engaged in a significant amount of work.  (Doc. No. 65 at 3.)  Plaintiff's counsel pursued written discovery, conducted depositions, sent henna tattoo products to laboratories for testing and analysis, and produced expert reports.  (Doc. No. 63-1 at ¶ 7; *see also* Doc. No. 65 at 4 ("Plaintiff's counsel also spent hours researching the chemical

make-up of Henna tattoos (specifically black henna), engaged two medical experts as well as a consultant with regard to the henna tattoo testing and engaged and coordinated with two laboratories to provide multiple rounds of testing on exemplar henna tattoo products.  Counsel also prepared for and handled four depositions in this matter, and reviewed hundreds of documents exchanged in discovery[.]").)  Plaintiff's counsel also successfully opposed part of Amazon's partial motion to dismiss.  (*See* Doc. Nos. 44, 45 (denying motion to dismiss as to misrepresentation claim and granting motion to dismiss as to implied warranty of fitness for a particular purpose claim).)

      *Difficulty of Problems Involved.*  This case involved complex products liability issues and a currently unsettled question of law—specifically, the viability of strict products liability claims against third party sellers (like Amazon) under Pennsylvania law.  (*See* Doc. No. 65 at 3–5.)

      *Importance of the Litigation.*  This litigation is obviously of the utmost importance to K.W.B., who is permanently disfigured.  (*See* Doc. No. 63-1 at 9–10.)  Plaintiff also argues that it has broader public health implications, since "it involves the sale of henna tattoo products marketed to children."  (Doc. No. 65 at 5.)

      *Professional Skill and Standing of Counsel.*  Plaintiff was represented by Gerald B. Baldino, Jr., Esquire and Gerald B. Baldino, III, Esquire of Sacchetta & Baldino.  Gerald Baldino, Jr. served as lead counsel and has been practicing law for more than thirty years.  (See Doc. No. 65 at 5–6.)  He has over thirty years of experience litigating personal injury and complex product liability claims.  (*Id.*)  Gerald Baldino, III was the associate on this matter and has been working on personal injury and products liability cases for approximately three years.  (*Id.* at 6.)

      *Result Obtained.*  Plaintiff's counsel obtained a favorable result for Plaintiff, ensuring

that K.W.B. is fairly compensated for the permanent scarring she has suffered.  Plaintiff's counsel also obtained a lien reduction from DHS.  (*See id.*; Doc. No. 63-1 at 7.)

*Ability of Client to Pay for the Services Rendered.*  K.W.B. is a minor plaintiff and not in a position to pay an attorney an hourly fee or cover the costs of litigation.  (Doc. No. 65 at 6.)  Likewise, K.W.B.'s mother was not financially able to cover these costs either.  (*Id.* at 6–7.)

*    *    *

Considering the factors together, the Court finds that the circumstances of this case necessitate an upward adjustment from the 25% presumptive lodestar.  Plaintiff's counsel invested significant time and resources into this case and took a risk by agreeing to take the case on contingency when it was unclear whether Amazon could be held liable as a third-party seller under Pennsylvania law.  (*See* Doc. No. 65 at 3–4.)  Further, lead counsel has over thirty years of experience in the personal injury and products liability sphere, and this case involved complex and novel legal issues.  And, most importantly, Plaintiff's counsel was able to obtain a sizeable award for K.W.B.  The Court finds that 33 1/3% is an appropriate fee award here.

### C. Case Expense Reimbursement

Finally, "[n]o . . . costs or expenses shall be paid out of any fund obtained for a minor . . . as a result of a compromise, settlement, dismissal or judgment unless approved by the court."  E.D. Pa. Local R. 41.2(c).  Plaintiff's counsel advanced expenses and seeks reimbursement.  (Doc. No. 63 at ¶ 14; Doc. No. 63-1 at 19.)  These included expenses for international service, laboratory studies, and retaining experts.  (Doc. No. 65 at 7.)  The Court finds the costs reasonable.

### III. Conclusion

For the reasons above, the Court will grant the Petition.  An appropriate Order, which has been filed under seal, follows.